G. A. JOHNSON, *Appellee*, V. THE KANSAS CITY HOME TELEPHONE COMPANY, *Appellant*.

No. 17,717.

SYLLABUS BY THE COURT.

1. PEDESTRIAN—*Crossing Public Street—Reasonable Prudence.* A traveler on a public street at a busy crossing is not necessarily negligent as a matter of law because he fails to look in a direction from which harm comes when he has time and opportunity to do so.  He is only held to the exercise of reasonable prudence under all the circumstances, and this may frequently be a question for the jury.

2. ——— *Contributory Negligence.* The failure of a pedestrian on a public street to take some particular precaution for

his safety, as, for example, to look across the end of a stand-
ing street car for vehicles approaching from the other side of
the car, before passing beyond its fender, does not constitute
contributory negligence unless it contributed to his injury.

3. VERDICT AND FINDINGS—*Sustained by the Evidence.* Under
the facts stated in the opinion it is held that findings of the
jury that the plaintiff, who was hurrying to catch a street
car, was in the exercise of due care and could not have
avoided a collision with a motorcycle although he could have
seen it coming if he had looked, are sustained by the law and
the evidence.

Appeal from Wyandotte district court. Opinion
filed June 8, 1912. Affirmed.

*A. L. Berger, William Needles, W. S. Hogsett,* and
*Murat Boyle,* for the appellant.

*J. O. Emerson,* and *David J. Smith,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for
damages for injuries received in a collision with a
motorcycle driven by a boy employed by the defendant.
The plaintiff recovered and the defendant appeals.

At the intersection of Minnesota avenue and Fifth
street in Kansas City a double track street railway
coming from the north on Fifth street curves west-
ward and connects with a double track line running
east and west on Minnesota avenue. Street travel of
all kinds is very heavy here, and it is a regular transfer
point from one street-car line to the other. On the day
of the event to be considered a Fifth street car coming
from the north stopped at the north side of Minnesota
avenue to permit passengers, including the plaintiff,
to alight. About the same time an eastbound car on
the Minnesota avenue line stopped at the west side of
Fifth street to receive passengers, including the plaintiff
and others, transferring from the Fifth street line.
After discharging its passengers the Fifth street car
started up and went partially around the curve to the

west but was unable to get entirely around because of the Minnesota avenue car. Work on the street car tracks was in progress, in consequence of which the street surface was considerably disturbed. On the north side of Minnesota avenue, near the junction of the rails of the two sets of tracks and so near the north rail of the Minnesota avenue line that cars had just room to pass, was a pile of rock, cement and earth. The Fifth street car was fifty feet long, the fender projecting four feet from the front of the car. The motorman of the car estimated the distance of the fender from the north track of the Minnesota avenue line, when the car stopped the second time, at four feet or more, perhaps eight feet. The plaintiff passed at a brisk gait along the west side of the Fifth street car in the direction of the Minnesota avenue car, which he desired to take. Just as he was passing or had passed the fender of the car he had left he was struck by the motorcycle. The motorcycle came from the east, dodged around the front of the Fifth street car, headed toward the north to avoid the pile of rock, picked up the plaintiff and carried him part of the way and threw him the rest of the way, altogether probably twenty-five feet, to the rock pile. The motorcycle was driven at such a rate of speed that the motorman of the Fifth street car described the plaintiff, after he was struck, as "flying through the air." The plaintiff testified that he looked up to see that there were no other street cars coming and saw none; that there was not room for a wagon or automobile to go between the two standing cars; that he did not look to either side for anything else; that when he came to the end of the car he could have seen the motorcycle if he had looked east, that he had time to do this, but that just when he got to a point where he could have seen the motorcycle it was upon him. The plaintiff was corroborated by several witnesses, who, from different points of observation, noted various features

of the incident. He was contradicted by one or two witnesses who claimed that he ran into the motorcycle while it was going at a rate of speed about equal to his own. The record fully sustains the following findings of fact returned by the jury:

"Was plaintiff hurrying to catch a street car at the time of the collision? Yes.

"Could plaintiff have seen the motorcycle coming if he had looked while crossing the street? Yes.

"If plaintiff had looked after reaching the front end of the street car, could he have seen the motorcycle and avoided the collision? No.

"Was plaintiff while crossing the street and at the time of the collision exercising ordinary care for his own safety? Yes."

The defendant accepts all estimates of distances unfavorable to the plaintiff as perfectly accurate, locates the Fifth street car as far from, and the plaintiff as near to, the Minnesota avenue track as the most extreme statements will warrant, makes the plaintiff go fast and the motorcycle go slow, seizes upon the plaintiff's admission that he had ample time to look but did not look, and so convinces itself that the jury were wrong and that the plaintiff was guilty of contributory negligence. The method is the reverse of the one which must be pursued when considering the verdict of a jury based on conflicting testimony and approved by the trial court. It is especially faulty in this case because it ignores the repeated statement of the plaintiff that he was struck just as he got to the front of the car, and his explicit declaration, "just as I got where I could see him he was into me." It also ignores the decided weight of the evidence that the motorcycle dodged through ahead of the car and around the fender with such speed and force that it lifted the plaintiff and carried and threw him a space of some twenty-five feet. The jury evidently believed that this occurred and believed the plaintiff's account of his conduct, and consequently were justified in con-

cluding that the plaintiff could not have avoided injury if he had been looking.

An omission to take some particular precaution must contribute to the injury complained of to constitute contributory negligence and bar recovery. Conceding that the plaintiff ought to have been looking east and in no other direction when he came opposite to the fender, it makes no difference with the result. While he might have seen what struck him he could not have escaped being run down. Besides this, the duty of the plaintiff to peer around the end of the car was not so absolute as the defendant would have it. A traveler on a public street at a busy crossing is not necessarily negligent, as a matter of law, because he does not look in a given direction at a given instant. He is only bound to exercise reasonable care for his safety under all the circumstances. The plaintiff had the right to hurry to the waiting car. He had the right to expect due care from other travelers and to assume that power-driven machines would not undertake to dodge at a dangerous rate of speed through the narrow space between the standing cars while passengers were transferring from one to the other. Even extraordinary diligence did not require him to anticipate that the boy would run around the fender and head in toward the north with the suddenness which the evidence discloses. Consequently the question whether the plaintiff exercised ordinary care for his own safety was properly submitted to the jury although the plaintiff did not look in the direction from which harm came when he first had time and opportunity to do so.

The defendant claims there is no evidence to show it is responsible for the conduct of the driver of the motorcycle. None was necessary. The petition alleged the agency of the driver in the operation of the machine when the plaintiff was injured, and the unverified general denial of the defendant raised no issue on the subject. The court apparently overlooked this

fact when instructing the jury, but it is of no consequence because the verdict accords with the admission made by the defendant through the form of its pleading. The defendant argues that the plaintiff tendered the issue in his cross-examination of the driver, who was a witness for the defendant. The plaintiff tendered the issue much earlier than that. He raised it in his petition, and the trouble with the defendant's case is that it has not as yet, either by pleading or by proof, denied that it is responsible for the injury which the driver inflicted. Besides this, the driver testified that he had worked for the telephone company for a period covering the date of the collision, that his regular duty was office work, that there was another boy whose business it was to ride but that he had been riding for three weeks because the other boy was hurt, and that he had ridden off and on while he had been working for the defendant. With this testimony in the record the court will not now order a retrial for the benefit of a defendant who did not take sufficient interest in the subject to deny responsibility for the boy's conduct when formally challenged to do so.

The fourth instruction to the jury is criticized. It stated that if the rate of speed of the motorcycle was so great that the driver did not have control of it, and so was likely to cause injury to pedestrians passing along the street under the circumstances disclosed by the evidence, and that the driver ran into the plaintiff and injured him, the driver was negligent and the defendant was liable unless the conduct of the plaintiff was such that he was guilty of contributory negligence. Speed so great that the driver did not have control of the machine meant speed so great that the machine could not be operated with recognition of the mutual rights of others to use the street in safety; and the circumstances disclosed by the evidence were, as the court indicated, the circumstances of pedestrians in

general at this busy place where, along with many other street uses, passengers transferred from one street-car line to another—conditions which the motorcycle driver was required to know and to recognize in regulating his rate of speed.

The fifth instruction is criticized. It stated that the plaintiff was guilty of contributory negligence if he stepped or ran in front of the motorcycle when he knew, or in the exercise of reasonable care ought to have known, that the driver could not stop or turn aside in time to avoid injury—which of course assumed, in accordance with other instructions, reasonable prudence on the part of the driver and not extraordinary or unusual effort.

The judgment of the district court is affirmed.